IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-383T
(Honorable Francis M. Allegra)

HARRY G. SCHORTMANN, Jr. and
JACQUELINE SCHORTMANN,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

RESPONSE OF PLAINTIFFS TO
MOTION OF THE UNITED STATES
FOR SUMMARY JUDGMENT AND
MEMORANDUM IN SUPPORT THEREOF

---

MIRIAM L. FISHER
MARY ELIZABETH RINALDI
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004

202.739.5177
202.739.3001 (Facsimile)

Attorneys for Petitioners

# TABLE OF CONTENTS


**Page**

Response of Plaintiffs to the Motion of the United States for Summary Judgment................1

Memorandum in Support of the Response of the Plaintiffs to Motion of the United States for Summary Judgment ................................................................3

Statement ....................................................................................................5

Argument:

I. The record reflects a mutual understanding that the refund would be granted for each of tax years 1986 through 1996, with ordinary statutory interest thereon; the IRS arbitrarily deviated from that agreement.....................................................6

II. Paying interest to the Schortmanns as of the date they overpaid their income taxes for each of the years in which a tax overpayment has been refunded is the only way to make the Schortmanns whole for the errors of the U.S. government..........................................9

Conclusion ..................................................................................10

Appendix A:

Exhibit 1: Affidavit of Harry G. Schortmann, Jr. .......................................A-1

## TABLE OF AUTHORITIES

Cases:

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986)..............................4

Statutes:

Internal Revenue Code of 1986 (26 U.S.C.)

§ 1311....................................................................3, 4, 7, 8
§ 1341....................................................................3, 8
§ 6611(b)(2)..............................................................4, 9

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-383T
(Honorable Francis M. Allegra)

HARRY G. SCHORTMANN, Jr. and
JACQUELINE SCHORTMANN,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

RESPONSE OF PLAINTIFFS TO THE
MOTION OF THE UNITED STATES
FOR SUMMARY JUDGMENT

---

Plaintiffs Harry G. Schortmann, Jr. and Jacqueline Schortmann oppose the motion of the Defendant, the United States, for summary judgment in this case and respectfully request this honorable Court to deny the Defendant's motion.

In support of its opposition to the motion, the Plaintiffs rely on the pleadings and the accompanying memorandum and exhibits attached thereto.

WHEREFORE, Harry G. Schortmann, Jr. and Jacqueline Schortmann pray that the Defendant's motion be denied.

Respectfully submitted,

s/Mary Elizabeth Rinaldi

MIRIAM L. FISHER
MARY ELIZABETH RINALDI
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004

202.739.5177
202.739.3001 (Facsimile)

Attorneys for Petitioners

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-383T
(Honorable Francis M. Allegra)

HARRY G. SCHORTMANN, Jr. and
JACQUELINE SCHORTMANN,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

MEMORANDUM IN SUPPORT OF THE
RESPONSE OF PLAINTIFFS TO THE
MOTION OF THE UNITED STATES
FOR SUMMARY JUDGMENT

---

The sole issue in this case is whether the Plaintiffs, Harry G. Schortmann, Jr. and Jacqueline Schortmann (the "Schortmanns"), are entitled to receive additional interest on refunds of their income taxes for overpayments they made with respect to their tax years 1986 through 1996. The Defendant's assertion that "the Plaintiffs received more interest than that to which they were entitled under [Internal Revenue Code[1]] § 1341 or by agreement" is incorrect. Def.'s Mem. Supp. Summ. J. 3 - 4. In fact, the evidence shows that the Internal Revenue Service and the Plaintiffs agreed that interest on the Plaintiffs' overpayments would be computed for each year in which a tax refund was issued, pursuant to the mediation provisions of IRC § 1311.

[1] All references to the Internal Revenue Code (the "IRC") are to the Internal Revenue Code of 1986, as amended.

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). The moving party bears the initial burden of showing an absence of evidence to support the opposing party's case. *Anderson*, at 248. If the non-moving party produces sufficient evidence to raise a genuine issue of fact material to the outcome of the case, the motion for summary judgment should be denied. *Id.*

There is no dispute in this case that the parties agreed that the Schortmanns were entitled to refunds of overpaid income tax for years 1986 through 1996 totaling $36,165.00 and that they were entitled to interest thereon. A genuine dispute exists, however, regarding the parties' agreement about how to compute that interest. In moving for summary judgment on this issue, the Defendant has not met its burden of showing an absence of evidence to support the Schortmanns' case. Specifically, the Defendant has not provided any evidence that supports its position that the parties agreed to compute the interest on the Schortmanns' overpayments of income tax using any method other that provided by IRC § 6611(b)(2). On the other hand, the record contains ample evidence that the parties agreed that the refund would be allowed in accordance with the mitigation provisions of IRC § 1311, which allow for interest to be computed using the method provided by IRC § 6611(b)(2). At the very least, the record contains sufficient evidence that the parties did not at any time agree to compute the interest using any method other than that provided by IRC § 6611(b)(2) for all of the tax years being refunded.

Thus, a genuine issue if fact remains for resolution by the Court. Specifically, the Court must hear evidence of the parties regarding what the Schortmanns and the Commissioner of Internal Revenue intended and agreed to regarding the payment of interest on the Schortmanns' overpayments of income tax for their tax years 1986 through 1996 when they entered into a

settlement agreement on that issue. Since a genuine issue of fact material to the outcome of the case remains, the Schortmanns respectfully submit that the Court should deny the Defendant's motion for summary judgment.

## STATEMENT

In 1978, Plaintiff Harry G. Schortmann, Jr. ("Mr. Schortmann")[2] was forced to retire from his federal job as an air traffic controller due to a debilitating illness that prevents him from working. From 1978 until 1997, Mr. Schortmann received taxable retirement benefits from the United States Office of Personnel Management (the "OPM"). Each year, Mr. Schortmann properly reported these payments as income on his federal income tax returns and paid the appropriate amount of income tax thereon. Then, in 1997, the Office of Workers' Compensation of the United States Department of Labor (the "OWC") determined that Mr. Schortmann was eligible for and should have received nontaxable disability payments from the time he retired in 1978 rather than taxable payments from OPM. Accordingly, OWC reimbursed OPM on Mr. Schortmann's behalf for the payments the OPM had made to Mr. Schortmann from 1978 to 1997.

On their 1997 federal income tax return, the Schortmanns claimed a refund of $36,772.60 for the taxes they had paid on the disability benefits for tax years 1978 through 1997. After reviewing the Schortmann's claim for refund, the Internal Revenue Service Office of Appeals ("IRS Appeals") and the Schortmanns entered into a settlement agreement (the "Settlement"). According to the Settlement, the parties agreed that the Schortmanns were entitled to a refund

[2] Jacqueline Schortmann is Mr. Schortmann's wife. Mrs. Schortmann is a plaintiff only by virtue of having filed a joint federal income tax return with Mr. Schortmann for the years at issue in this case.

totaling $36,165.00 of overpayments for tax years 1986 through 1996 and that the Schortmanns would receive statutory interest on said overpayments.

At no time during the settlement process did anyone in the Internal Revenue Service (the "IRS") explain to the Schortmanns that their settlement would not include statutory interest for each of the years with respect to which a refund of overpaid tax was to be made. Throughout the settlement process, and at the time they entered into the Settlement, the Schortmanns understood that interest would be computed as follows: First, that the IRS would determine how much income tax was overpaid for each tax year 1986 through 1996; then, the IRS would compute interest on each year's overpayment amount as of the date the overpayment was made. Thus, the Schortmanns understood that statutory interest would be computed for each year as of the date the overpayment was made. At no time did the IRS ever advise the Schortmanns otherwise. Specifically, at no time did the IRS advise the Schortmanns that interest would only be paid with respect to six of the eleven years for which overpayments were refunded pursuant to the Settlement. Furthermore, at no time did the IRS ever advise the Schortmanns that interest on the entire $36,165.00 refund would only begin to accrue as of April 15, 1998. In the Shortmanns' view, either alternative would have materially changed the terms of the Settlement.

I. In connection with Settlement, the Schortmanns understood the refund would be granted for each of tax years 1986 through 1996, with ordinary statutory interest thereon; the IRS arbitrarily deviated from that agreement.

At the time they entered into the Settlement, the IRS determined, and the Schortmanns understood, that the Schortmanns' refund would be granted as a refund of overpayments for each of the years 1986 through 1996, with statutory interest thereon. This is what the Schortmanns, individuals with no training in tax law or tax administration matters, understood when the IRS

advised them it would "figure the interest" it owed to them. *See* IRS letter of May 27, 1999 to Mr. Schortmann from Associate Chief, New England Appeals Office. Def.'s Mem. Supp. Summ. J., Ex. 6, App. B. Consistent with that understanding, the IRS processed the Schortmanns' refund for overpayments in years for which the statute of limitations was otherwise closed under the mitigation provisions of Internal Revenue Code § 1311, as evidenced by IRS internal documentation. Specifically, on July 14, 1999, Gerald McMahon, Chief, New England Appeals, signed a memorandum entitled "Schortmann, H & J. – 1997 (Claim), Barred YRS: 1995 thru 1986 – Section 1311" that states:

> Assessments, refunds and credits which otherwise would be barred by the statute of limitations or other rules of law may be allowed to correct specified errors under the mitigation provision of Code Section 1311. *Therefore, in accordance with section 1311*, the taxpayers will be allowed refunds as outlined in Appeals transmittal for tax years 1995 thru 1986. (1996 [year] also included but not barred.)
>
> Def.'s Mem. Supp. Summ. J., Ex. 4, App. B. (Emphasis added.)

The Appeals Transmittal and Case Memorandum to which the Chief of New England Appeals refers lists the amount of income tax to be refunded to the Schortmanns for each tax year 1986 through 1996. Def.'s Mem. Supp. Summ. J., Ex. 4, App. B. Similarly, as the IRS transcripts of the Schortmanns' account show, the IRS processed and recorded the refunds as being issued from tax years 1986 through 1996. Def.'s Mem. Supp. Summ. J., Ex. 7, App. B. These actions by the IRS are consistent with the parties' intent and agreement to allow the refunds for each of the specified years, including ordinary statutory interest thereon.

The IRS determined the amount of interest to be paid to the Schortmanns for years 1991 through 1996 accordingly. For each of these six years, the IRS computed the overpayment interest due to the Schortmanns as of the date of the overpayment (*i.e.*, the interest for tax year

1991 was calculated as of April 15, 1992, the date the Schortmanns were deemed to have timely paid their 1991 income taxes). However, the IRS unilaterally and arbitrarily declined to pay the Schortmanns interest with respect to the refunded overpayments for tax years 1986 through 1990. The July 14, 1999 memorandum from Ellie McCarthy of the New England Appeals office states:

> Per discussion with Chief, Appeals Gerry McMahon, it was agreed that interest would be refunded on the following years from the due date of the return: 1996, 1995, 1994, 1993, 1992, 1991. The remaining years 1990, 1989, 1988, 1987 and 1986 will have no interest refunded.

Def.'s Mem. Supp. Summ. J., Ex. 4, App. B. There is no explanation for how IRS Appeals determined that interest would be paid with respect to the refunds for tax years 1991 through 1996, but not with respect to the taxes refunded for years 1986 through 1990. This arbitrary awarding of interest is not authorized under any lawful refund method available to the IRS. Moreover, it is clear that the Schortmanns were not aware of and never agreed to this arbitrary reduction in statutorily allowed interest. Affidavit of Harry G. Schortmann, Jr., Ex 1, App. A. In fact, the record shows that this arbitrary determination was made by IRS Appeals on or about June 14, 1997 - after the parties had already entered into the Settlement.[3]

In processing the Settlement, from August 24, 1999 to November 10, 1999, the IRS issued the Schortmanns eleven separate checks, one for each tax year with respect to which an overpayment was refunded pursuant to the agreement. Def.'s Mem. Supp. Summ. J., Ex. 8, App. B. The IRS did not process the Settlement under the claim of right provisions of IRC § 1341.[4] Had the IRS intended to allow the Schortmanns' refunds in accordance with the claim of right

---

[3] On May 27, 1999, the IRS acknowledged that the Settlement was approved. Def.'s Mem. Supp. Summ. J., Ex. 6, App. B.

[4] Both the mitigation provisions provided by IRC § 1311 and the claim of right provisions provided by IRC § 1341 are intended to remedy injustices to taxpayers by, in effect, opening up tax years that have been closed by the statute of limitations.

provisions, it would have written them one check for $36,165.00 plus interest accrued from April 15, 1998 through the date of payment.

Internal IRS documentation shows conclusively that the IRS intended to and did refund the Schortmanns' income tax overpayments pursuant to the mitigation provisions, which do not restrict the amount of interest payable to the taxpayer to any amount less than ordinary statutory interest for each year in which a refund is granted. See IRC § 6611(b)(2). This is what the Schortmanns understood the Settlement to entail and, based on IRS internal documentation and the actual processing of the refunds, it is what the IRS intended and agreed to as well. The record reflects that both the IRS and the Schortmann's understood that the Settlement would entail multiple year refunds, including normal statutory interest thereon. The Service's arbitrary and unsupportable decision to limit the payment of interest to six of the eleven refund years deviated from that agreement; the Service should be bound to the Settlement it made with the Schortmanns, and interest with respect to each overpayment year should be allowed.

## II. Paying ordinary statutory interest to the Schortmanns with respect to each year for which they received an overpayment is the only way to make the Schortmanns whole for the errors of the U.S. government.

The Schortmanns properly reported and paid income taxes on the disability payments for two decades. Had those payments been properly processed by the U.S. government, those payments would have been excludable from Mr. Schortmann's income, and the Schortmanns would have owed no income taxes on the payments. Thus, the U.S. government's admitted error over a 19-year period cost the Schortmanns the use of thousands of dollars that they could have applied toward their bills and expenses or invested for their own benefit. But due to the government's error, the United States had use of the Schortmanns' funds over nearly two

decades because the Schortmanns paid income taxes they did not owe. The granting of the Schortmanns' refund claim in this instance went only part of the way toward remedying this injustice. The Schortmann's did not agree to a partial remedy and believed they would be compensated for the time value of money, as the Internal Revenue Code contemplates. In the interests of fundamental fairness, the Schortmanns should receive interest for all the years with respect to which the IRS has refunded their taxes, and such amount should not be arbitrarily reduced.

CONCLUSION

Wherefore, because a genuine issue of fact material to the outcome of the case remains, specifically regarding the terms agreed to by the parties for computing interest on the Schortmanns' overpayments of income tax, the Schortmanns pray that the Court deny the Defendant's motion for summary judgment.

Respectfully submitted,

s/Mary Elizabeth Rinaldi

MIRIAM L. FISHER
MARY ELIZABETH RINALDI
Morgan Lewis & Bockius LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004

202.739.5177
202.739.3001 (Facsimile)

Attorneys for Petitioners

# APPENDIX A

# EXHIBIT 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 06-383 t
(Honorable Francis M. Allegra)

HARRY G. SCHORTMANN, Jr. and
JACQUELINE SCHORTMANN,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

AFFIDAVIT OF HARRY G. SCHORTMANN, Jr.

I, **HARRY G. SCHORTMANN, Jr.**, an individual resident of Holliston, Massachusetts, United States of America, having been having been duly sworn, make oath and say as follows:

1. In 1998, I made a claim for refund of $36,772.60 in income taxes I erroneously paid during my taxable years 1981 through 1996.
2. On or about April 20, 1999, the Internal Revenue Service Office of Appeals (the "IRS") and I reached a settlement with respect to my claim for refund (the "Settlement"). My understanding of the Settlement was that I would receive a total of $36,165 in income taxes that I overpaid for my taxable years 1986 through 1996. The IRS and I also agreed that I was entitled to receive interest on the $36,165.00 of income taxes being refunded to me. At the time the IRS and I entered into the Settlement, the IRS had not computed the

amount of interest it was going to pay to me, however, the IRS told me that it would compute the amount of interest after the settlement agreement was signed.

3. Throughout the entire settlement negotiation, and at the time I entered into the Settlement, I believed that the IRS was going to compute the interest owed to me as follows: first, the IRS was going to determine how much income tax I overpaid in each taxable year; and, second, it would compute interest from the date of the overpayment in each tax year as of the date the overpayment was actually made.

4. At no time during the settlement negotiation process did the IRS ever explain to me that they would only pay me interest computed as of April 15, 1998 or that the IRS would only pay me interest on five of the eleven years for which they were refunding my income taxes. Had the IRS explained this to me, I would not have agreed to the settlement.

Harry G. Schortmann, Jr.
AFFIANT

COMMONWEALTH OF MASSACHUSETTS )
) ss.
COUNTY OF MIDDLESEX )

On ~~September __, 2006~~ August 3, 2007 before me, Carol Brown, Notary Public, personally appeared Harry G. Schortmann, personally known to me to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Carol C. Brown
Notary Public

CAROL C. BROWN Notary Public
My Commission Expires Sept. 3, 2010

Commonwealth of Massachusetts
Middlesex, ss

On this 3rd day of August, 2007, before me, the undersigned notary public, personally appeared _____ proved to me through satisfactory evidence of identification, which were MA Driver's Lic. to be the person whose name is signed on the preceding or attached document, and acknowledged to me that he signed it voluntarily for its stated purpose.

Carol C. Brown
Notary Public